IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

NIGEL E. JACKSON,
*on behalf of himself and all*
*similarly situated individuals,*
    Plaintiff,

    v.                                      Civil No. 3:21cv211 (DJN)

GENUINE DATA SERVICES, LLC,
    Defendant.

## MEMORANDUM OPINION
### (Granting Motion to Dismiss, Denying Jurisdictional
### Discovery and Denying Motion to Strike)

Plaintiff Nigel Jackson ("Plaintiff") brings this action individually and on behalf of all

other similarly situated individuals against Defendant Genuine Data Services, LLC

("Defendant"), alleging violations of the Fair Credit Reporting Act ("the FCRA").  This matter

now comes before the Court on Defendant's Motion to Dismiss the Amended Complaint Under

Rule 12(b)(2) for Lack for Personal Jurisdiction and Rule 12(b)(3) for Improper Venue, or, in the

Alternative, to Transfer (ECF No. 27) and Plaintiff's Motion to Strike Defendant's Reply in

Support of Its Motion to Dismiss (ECF No. 45).  For the reasons set forth below, the Court

hereby GRANTS the Motion to Dismiss (ECF No. 27) and DENIES both Plaintiff's Motion to

Strike (ECF No. 24) and request for jurisdictional discovery.  (Opp'n to Mot. to Dismiss at 38-

39; Mem. in Supp. of Mot. to Strike at 10.).[1]

---

[1]    Because the parties' papers adequately address the relevant factual and legal issues at bar, the Court will also DENY Plaintiff's request for an evidentiary hearing. (Pl.'s Opp'n to Def. Genuine Data Services, LLC's Mot. to Dismiss at 39 (ECF No. 39)); *see Grayson v. Anderson,* 816 F.3d 262, 268-69 (4th Cir. 2016) ("As with many pretrial motions, a court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion.  If

## I.      BACKGROUND

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted).  If a federal court reviews "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," then a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2).  *Id.* at 268 (citations omitted).  "[T]he court must construe all relevant pleading allegations in the light most favorable to [plaintiffs], assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), though the Court need not consider only Plaintiffs' proof of personal jurisdiction to decide which inferences it will make, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993).  "[W]here the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence."  *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (citation omitted).  Similarly, the Court may consider evidence outside of the pleadings in ruling on a motion for improper venue and will also draw all inferences in favor of Plaintiffs. *Sucampo Pharms., Inc. v. Astellas Pharma*,

---

the court deems it necessary or appropriate, or if the parties so request, it may conduct a hearing . . . . It may also consider jurisdictional evidence in the form of depositions, interrogatory answers, admissions, or other appropriate forms. But we see no reason to impose on a district court the hard and fast rule that it must automatically assemble attorneys and witnesses when doing so would ultimately serve no meaningful purpose.")

*Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006).  Based on these standards, the Court accepts the following facts.

### A.      Defendant's Operations

Defendant came into existence in 2010.  (Def. Genuine Data Services, LLC's Reply in Supp. of Its Mot. to Dismiss the Am. Compl. Under Rule 12(b)(2) for Lack of Personal Jurisdiction and Rule 12(b)(3) for Improper Venue or in the Alternative, to Transfer ("Reply") Ex. A ("2d Klafehn Decl.") ¶ 3 (ECF No. 44).)  It sells bulk public record data, which it obtains from third-party public record data collection vendors, and provides this data to its clients periodically.  (2d Klafehn Decl. ¶¶ 5, 9-10.)  Defendant is incorporated in Delaware, has its principal place of business in Dallas, Texas, and has its technology team in Chapin, South Carolina.  (Def. Genuine Data Services, LLC's Mem. in Supp. of Its Mot. to Dismiss the Am. Compl. Under Rule 12(b)(2) for Lack of Personal Jurisdiction and Rule 12(b)(3) ("Def.'s Mem. in Supp. of Mot. to Dismiss") Ex. A. ("1st Klahfen Decl.") ¶¶ 7-8 (ECF No. 28).)  Of Defendant's 21 employees, all but four reside in Texas and South Carolina, and none reside in Virginia.  (1st Klafehn Decl. ¶ 9.)  Defendant does not have any employees, officers, offices, computer services or advertising in Virginia; it "operates exclusively from Dallas . . . and Chapin" and has not sold records or data to a customer in Virginia.  (1st Klafehn Decl. ¶¶ 10-15.) Defendant "does not know about whom or for whom its clients use [its] bulk public record data," or whether its clients use the data at all.  (2d Klafehn Decl. ¶¶ 11-12.)  According to Plaintiff, Defendant constitutes a consumer reporting agency subject to the provisions of the FCRA, because

> it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses

interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

(Am. Compl. ¶ 15.)[2]

### B.     Factual Background

Before Defendant's inception, Defendant's predecessor collected a Virginia traffic record from July 2000 reflecting that Plaintiff had been found "Guilty in Absentia" for the traffic infraction of "NO CO TAG-B." (Am. Compl. ¶¶ 31-34; 2d Klafehn Decl. ¶ 14.)  The predecessor provided this record to RealPage. (2d Klafehn Decl. ¶ 14.)  At some point after Defendant's creation, Defendant received the record from its predecessor, and later, it also provided the record to RealPage as part of a bulk public data file that included thousands of other public records. (2d Klafehn Decl. ¶¶ 19.)

In December 2019,[3] Plaintiff applied to rent an apartment at The Nexus at West Alex ("The Nexus"), an apartment complex located in the Eastern District of Virginia, which required a background check. (Am. Compl. ¶¶ 25-26.)  Plaintiff's prospective landlord ordered a background check from RealPage, which provides consumer reports to landlords for tenant screening purposes under the name "The Leasing Desk," in December 2020. (Am. Compl. ¶¶ 5, 27-28.)  Using the public record data that it received from Defendant and Defendant's

---

[2]     Defendant challenges this assertion, arguing that it does not function as a consumer reporting agency, because it does not create or sell consumer reports. (Def.'s Mem. in Supp. of Mot. to Dismiss at 2.)  For the purposes of deciding this Motion, the Court will assume without deciding that Defendant operates as a consumer reporting agency subject to the FCRA. *See Combs*, 886 F.2d at 676 (holding that on a Rule 12(b)(2) motion, the court must construe all facts in the light most favorable to plaintiff).

[3]     The Amended Complaint states that Plaintiff applied to live at The Nexus at West Alex in December 2019, but it also alleges that RealPage did not receive the traffic infraction record and prepare its background check report until December 2020, a year after Plaintiff submitted his rental application. (Am. Compl. ¶¶ 25, 38.)

predecessor, RealPage included Plaintiff's July 2000 traffic infraction in the background check that it provided to The Nexus. (Am. Compl. ¶ 38.) As a result, The Nexus denied Plaintiff's rental application. (Am. Compl. ¶ 39.)

At the time when the record at issue was first collected, Defendant did not exist. (2d Klafehn Decl. ¶ 14.) Instead, Defendant's predecessor collected the record and first provided it to RealPage, then later transferred the record to Defendant. (2d Klafehn Decl. ¶¶ 14-15.) Defendant also provided the record to RealPage in a bulk public data file. (2d Klafehn Decl. ¶ 19.)

###    C.    The Amended Complaint

On March 30, 2021, Plaintiff filed his original Complaint. (ECF No. 1.) On June 18, 2021, Defendant moved to dismiss this Complaint. (ECF No. 15.) On July 9, 2021, Plaintiff filed his Amended Complaint, raising two claims for relief based on the above allegations. (ECF No. 22.) Count One asserts a class-action claim under the FCRA, alleging that Defendant neglected to remove traffic infraction information older than seven years from background check reports on Plaintiff and each of the class members in violation of 15 U.S.C. § 1681c(a). (Am. Compl. ¶¶ 57-58.) Count Two also asserts a class-action claim under the FCRA, alleging that Defendant did not implement procedures designed to prevent violations of FCRA in the course of its record reporting in violation of 15 U.S.C. § 1681e(a). (Am. Compl. ¶ 73.) Based on these claims, Plaintiff, on his own behalf and on behalf of the putative class members, seeks class certification, statutory and punitive damages and attorney's fees. (Am. Compl. at 15.)

###    D.    Defendant's Motion to Dismiss

In response to the Amended Complaint, Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under 12(b)(3) for

5

improper venue, or, in the alternative, to transfer. (ECF No. 27.) Defendant argues that Plaintiff could not establish that this Court had general or specific personal jurisdiction over Defendant, and that neither the Eastern District of Virginia nor the Richmond Division constitute proper venues for this action. (Mem. in Supp. of Mot. to Dismiss at 8-28.) In support of its Motion to Dismiss, Defendant attached a Declaration by Cathy Klafehn ("Klafehn"), Defendant's former Vice President of Operations, who described Defendant's business operations based on her personal knowledge and review of company records. (1st Klafehn Decl. ¶¶ 1-2.)

Plaintiff responded to this Motion on September 9, 2021. (Pl.'s Opp'n to Def. Genuine Data Services, LLC's Mot. to Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction and Rule 12(b)(3) for Improper Venue, or in the Alternative, to Transfer ("Opp'n to Mot. to Dismiss") (ECF No. 39).) In his Response, Plaintiff requested that, if the Court found that it lacked personal jurisdiction over Defendant, then Plaintiff would be permitted to take jurisdictional discovery on the extent of Defendant's contacts with Virginia. (Opp'n to Mot. to Dismiss at 38-39.) The Court later granted another extension of time for Defendant to file its Reply. (ECF No. 42.) On October 7, 2021, Defendant filed its Reply, to which it attached a second Declaration by Klafehn, rendering the Motion to Dismiss the Amended Complaint ripe for review.

### E.      Plaintiff's Motion to Strike

On October 19, 2021, Plaintiff filed a Motion to Strike, moving to strike Defendant's Reply in support of its Motion to Dismiss the Second Amended Complaint and Klafehn's Declarations. (ECF No. 45.) Plaintiff posited that Defendant introduced new arguments in its Reply, and that the first and second Klafehn Declarations contradicted each other. (Pl.'s Mem. in Supp. of His Mot. to Strike Def. Genuine Data Services, LLC's Reply in Supp. of Its Mot. to

6

Dismiss ("Mem. in Supp. of Mot. to Strike") at 3 (ECF No. 46).)  The Court issued an Order

directing Defendant to respond to the Motion to Strike and prohibiting Plaintiff from filing a

Reply.  (ECF No. 47.)  Defendant then filed its Opposition to the Motion to Strike on November

16, 2021, rendering the Motion to Strike ripe for review.  (ECF No. 50.)

## II.    THE MOTION TO STRIKE

At the outset, the Court will deny Plaintiff's Motion to Strike Defendant's Reply in

support of its Motion to Dismiss and the Klafehn Declarations.  In his Motion to Strike, Plaintiff

admonishes Defendant for its "shifting factual stories."  (Mem. in Supp. of Mot. to Strike at 4.)

Plaintiff argues that Defendant raised new facts and arguments in its Reply brief, including

information about Defendant's use of third parties and its predecessor.  (Mem. in Supp. of Mot.

to Strike at 3-4.)  Additionally, Plaintiff takes issue with the Klafehn Declarations, largely

because Klafehn stated in her first Declaration that Defendant obtained data "from" Virginia, and

the in the second, she stated that Defendant uses third-party vendors as its means of collecting

this data indirectly from the state.  (Mem. in Supp. of Mot. to Strike at 3.)  He also asserts that

Klafehn lacked personal knowledge of her statements in her Declarations and accuses

Defendant's attorneys of penning the affidavit for her.  (Mem. in Supp. of Mot. to Strike at 8-10.)

Defendant responds that Rule 12(f) does not apply to the contested brief and affidavits, that the

Reply merely responds to Plaintiff's arguments and that the Klafehn Declarations do not

contradict each other.  (Opp'n to Mot. to Strike at 2-13.)

Federal Rule of Civil Procedure 12(f) allows a district court, by motion of a party or on

its own initiative, to "strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 7(a) defines pleadings as a

complaint, an answer to a complaint, an answer to a counterclaim or crossclaim, a third-party

complaint, an answer to a third-party complaint and "if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). By omission from Rule 7(a), motions, briefs and affidavits necessarily do not constitute pleadings. *Id.*; *see Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502, 516 n.8 (E.D. Va. 2011) (distinguishing motions from pleadings); *Int'l Longshoremen's Ass'n. Steamship Clerks Local 1624 v. Va. Int'l Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995) [hereinafter *Int'l Longshoremen's Ass'n*] (citations omitted) ("Briefs and affidavits, however, are not pleadings.").

Courts typically construe a Rule 12(f) motion to strike as "an improper procedural tool for striking another motion" or other filings that do not qualify as pleadings. *Nationwide Mut. Ins. Co.*, 785 F. Supp. 2d at 516; *see also Structural Concrete Prods., LLC v. Clarendon Am. Ins. Co.*, 244 F.R.D. 317, 321 (E.D. Va. 2007) (citation omitted) ("[I]t is not proper under [Rule] 12(f) to make a motion to strike a motion."); *Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, 2008 WL 11379924, at *4 (E.D. Va. May 23, 2008) ("Thus, in plain terms Rule 12(f) cannot be used to strike an affidavit and is not a proper way to challenge the declaration of [a witness]."); *Int'l Longshoremen's Ass'n*, 904 F. Supp. at 504 (finding that Rule 12(f) motion to strike constituted improper procedural grounds to strike reply brief and accompanying affidavits).

On occasion, courts in this District "ha[ve] considered motions to strike on the merits, notwithstanding that the motions were made in reference to materials that were not 'pleadings' under . . . Rule 7(a)." *James v. Experian Info. Sols., Inc.*, 2014 WL 29041, at *6, *6 n.7 (E.D. Va. Jan. 2, 2014) (Payne, J.). "However, when specifically confronted with the issue, [this] Court has held that a party's brief [or motion or affidavit] is not a pleading under the Federal Rules of Civil Procedure, and is therefore not subject to a motion to strike under Rule 12(f)." *Id.* at *6 (citing *Int'l Longshoremen's Ass'n*, 904 F. Supp. at 504). Adhering to this line of

reasoning "provides a simple, clear method to dispose of the motion[s] to strike" presently before the Court. *Id.* For this reason, the Court need not address the merits of Plaintiff's Motion to Strike and will summarily deny it.

## III.    THE RULE 12(B)(2) MOTION

### A.    Standard of Review

Determinations of personal jurisdiction require a two-step inquiry. First, a court must find that the long-arm statute of the forum state authorizes the service of process to the defendant, or, in federal question cases, that the federal statute relied upon by the plaintiffs provides for nationwide service of process to any defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105 (1987) ("[W]hether a defendant is amenable to service [constitutes] a prerequisite to [a court's] exercise of personal jurisdiction."). Then, the court must find that the exercise of personal jurisdiction over the defendant satisfies the requirements of the Due Process Clause of the Fifth or Fourteenth Amendments, depending on which statute authorizes the service of process. *Id.*

When the federal statute relied upon by the plaintiffs provides for nationwide service of process, the Due Process Clause of the Fifth Amendment — not the Fourteenth Amendment — determines the extent of a court's personal jurisdiction. *Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1044 (E.D. Va. 1997). The Fifth Amendment provides for a much broader exercise of personal jurisdiction than the Fourteenth Amendment, requiring only "sufficient aggregate contacts with the United States as a whole." *Id.* Conversely, "[i]n federal question actions based on a statute that does not provide for nationwide jurisdiction, a federal court exercises personal jurisdiction over a defendant in the manner consistent with state law," including the limitations of the forum state's long-arm statute

and the Fourteenth Amendment's Due Process Clause. *Moseley v. Fillmore Co.*, 725 F. Supp. 2d 549, 559 (W.D.N.C. 2010) (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) and Fed. R. Civ. P. 4(k)(1)(A)); *see ESAB Grp., Inc.*, 126 F.3d at 622 (explaining that the *"in personam* jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment").

Thus, as a predicate to its exercise of personal jurisdiction over Defendant, the Court must first consider whether the federal statute upon which Plaintiffs rely — the FCRA — authorizes nationwide service of process; otherwise, the Court must find that Virginia's long-arm statute authorizes service. "The FCRA does not authorize nationwide service of process," *Juarez v. Dimon*, 2014 WL 7177544, at *2 (C.D. Ill. Dec. 16, 2014) (citing 15 U.S.C. § 1681p); therefore, Virginia's long-arm statute provides Plaintiffs' only statutory basis for the exercise of personal jurisdiction.

Because Virginia's long-arm statute extends personal jurisdiction to the extent that the Fourteenth Amendment Due Process Clause permits, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries become one." *Stover v. O'Connell Assocs.*, 84 F.3d 132, 135-36 (4th Cir. 1996); *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Within those parameters, a court may find that it has either general or specific personal jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General personal jurisdiction exists over defendants with "continuous and

systematic contacts with the forum state, such that a defendant may be sued in that state for any

reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin.*

*Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). When the "continuous

corporate operation within a state [is] thought so substantial and of such a nature as to justify suit

against it on causes of action arising from dealings entirely distinct from those activities," a court

can assert general jurisdiction over a corporate defendant. *Nichols v. G.D. Searle & Co.*, 991

F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co.* 326 U.S. at 318)). Otherwise, a court

may exercise only specific personal jurisdiction if a defendant's minimum contacts with the

forum state form the basis for the claims in question. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th

Cir. 2004). Here, Plaintiff asserts only specific personal jurisdiction; and, consequently, the

Court will not address general jurisdiction. (Opp'n to Mot. to Dismiss at 3.)

With respect to specific personal jurisdiction, the Fourth Circuit has established a three-

part test, requiring trial courts to consider: "(1) the extent to which the defendant purposefully

availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's

claims arise out of those activities directed at the State; and (3) whether the exercise of personal

jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*,

561 F.3d 273, 278 (4th Cir. 2009) (internal quotations and citations omitted). Alternatively,

because personal jurisdiction constitutes an individual right, a party may waive that right and

submit to the personal jurisdiction of a court by appearance or by providing express or implied

consent in "[a] variety of legal arrangements." *Ins. Corp. of Ireland, Ltd. v. Compagnie des*

*Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).

Under the first prong of the test for specific jurisdiction, the Fourth Circuit has

enumerated several nonexclusive factors to consider, including:

11

whether the defendant maintains offices or agents in the forum state, whether the defendant owns property in the forum state, whether the defendant reached into the forum state to solicit or initiate business, whether the defendant deliberately engaged in significant or long-term business activities in the forum state, whether the parties contractually agreed that the law of the forum state would govern disputes, whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, the nature, quality and extent of the parties' communications about the business being transacted, whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp.*, 561 F.3d at 278 (cleaned up). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id.*

"The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278-79 (citing *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). Finally, the third prong "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, a court may evaluate "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies." *Id.* (citing *Consulting Eng'rs Corp.*, 471 U.S. at 477). With this standard in mind, the Court now turns whether it can exercise personal jurisdiction over Defendant.

**B.     Analysis**

Here, Defendant contends that it did not purposefully direct activities in Virginia, because it does not maintain a physical presence there and does not advertise there, and it obtains bulk data from all fifty states without targeting Virginia in particular. (Def.'s Mem. in Supp. of Mot. to Dismiss at 11-12.) Further, Defendant explains that it did not communicate with a party in Virginia with respect to Plaintiff, as it merely transmitted data to RealPage, which then included the record at issue in a report to The Nexus. (Def.'s Mem. in Supp. of Mot. to Dismiss at 12.) Defendant's operations take place in Texas and South Carolina, and it has its headquarters in Texas. (Def.'s Mem. in Supp. of Mot. to Dismiss at 12.)

Plaintiff responds that Defendant assented to personal jurisdiction in Virginia by obtaining the data at issue, because it obtained the data from the Online Case Information System 2.0 ("OCIS 2.0"), a database maintained by the Office of the Executive Secretary of the Supreme Court of Virginia ("OES"). (Opp'n to Mot. to Dismiss at 14.) To access data on the OCIS 2.0, users must agree to an End User License Agreement ("EULA") that requires them to "subject [themselves] to the laws and jurisdiction of the Commonwealth of Virginia." (Opp'n to Mot. to Dismiss at 14 (quoting *Terms and Conditions of Use*, Virginia Judiciary Online Case Information System 2.0[4]).) Alternatively, he argues, Defendant purposefully availed itself of doing business in Virginia by obtaining data from the OES, which has its office in Richmond, thereby targeting Virginia residents. (Opp'n to Mot. to Dismiss at 16-17.) Similarly, Plaintiff also contends that Defendant must have known that RealPage planned to issue reports about Virginia consumers, because Defendant provided RealPage with public records from Virginia. (Opp'n to Mot. to Dismiss at 18.)

---

[4]     Available at https://eapps.courts.state.va.us/ocis/landing/false.

In its Reply, Defendant points out that its predecessor, not Defendant itself, first obtained the record at issue before 2010, and at that point, the current iteration of the OCIS did not exist. (Reply at 3-4.) Thus, according to Defendant, no evidence indicates that either Defendant or its predecessor agreed to the EULA subjecting it to Virginia jurisdiction. (Reply at 4.) Moreover, Defendant argues, third-party data vendors, not Defendant, collect the public data that Defendant later provides to other entities, and the contacts between these vendors and Virginia cannot give rise to personal jurisdiction over Defendant. (Reply at 11.)

As to the second prong of the test, Defendant argues that Plaintiff's claims center on Defendant's sale of bulk public record data to RealPage, not the manner in which Defendant collected this data, meaning that Plaintiff's claims do not arise out of Defendant's collection of court records from Virginia. (Def.'s Mem. in Supp. of Mot. to Dismiss at 13.) Defendant asserts that Plaintiff's own residence in Virginia and application for an apartment there cannot give rise to sufficient minimum contacts between itself and the forum state. (Def.'s Mem. in Supp. of Mot. to Dismiss at 13-15.)

In his Response, Plaintiff posits that, because "obtaining data [is] a necessary predicate to reporting it," Plaintiff's claims necessarily arose out of Defendant's collection of Virginia public record data. (Opp'n to Mot. to Dismiss at 19.) Likewise, Plaintiff argues that Defendant knew that when it provided the data to RealPage, RealPage intended to use it to prepare a report about a Virginia. (Opp'n to Mot. to Dismiss at 21-22.) For these reasons, Plaintiff continues, Defendant's actions also satisfied Virginia's long-arm statute. (Opp'n to Mot. to Dismiss at 22-24.)

Finally, in addressing the third prong, Defendant argues that haling it into court in Virginia would offend traditional notions of fair play and substantial justice, because alternate

14

fora for this suit, such as Texas, exist.  (Def.'s Mem. in Supp. of Mot. to Dismiss at 16-17.)

Plaintiff responds that exercising personal jurisdiction over Defendant would not violate due

process.  (Opp'n to Mot. to Dismiss at 24-25.)

The Court agrees with Defendant and finds that it cannot exercise personal jurisdiction

over Defendant, because Defendant did not purposefully avail itself of the forum state.  As a

threshold matter, the Court cannot find that Defendant waived its right to challenge personal

jurisdiction in Virginia by submitting to the EULA on the OCIS 2.0 website.  Nowhere in his

Amended Complaint did Plaintiff allege that Defendant or a third-party vendor agreed to such a

EULA; rather, Plaintiff raised this argument as part of its Opposition to the Motion to Dismiss.

(Opp'n to Mot. to Dismiss at 9-10.)  And as Defendant highlights, Defendant's predecessor

collected the record of Plaintiff's traffic infraction before the current iteration of the OCIS

website existed.  (Reply at 3-4.)  Plaintiff does not allege in the Amended Complaint or argue in

his brief that the website contained a EULA at the time of collection.  Although the Court must

construe all facts in the light most favorable to Plaintiff, it cannot presume that Defendant or its

predecessor agreed to subject itself to Virginia jurisdiction on these facts.  *See Combs*, 886 F.2d

at 676 ("[T]he court must construe all relevant pleading allegations in the light most favorable to

the plaintiff.").

Moreover, Plaintiff has not pled sufficient facts to suggest that Defendant purposefully

directed its activities relevant to this case in Virginia.  In his Amended Complaint, Plaintiff

himself alleges that "[d]iscovery will show that Defendant (either itself or through a vendor)

collects" bulk public record files for reporting.  (Am. Compl. ¶ 23.)  However, Defendant has

proffered an affidavit stating that Defendant "obtains Virginia public record data from third-party

data collection vendors."  (2d Klafehn Decl. ¶ 9.)  Because Plaintiff has not contradicted this

piece of Defendant's evidence — indeed, he alluded to this fact in his Amended Complaint — the Court can accept it as true. *See Reynolds Foil Inc. v. Pai*, 2010 WL 1225620, at *1 (ED. Va. Mar. 25, 2010) ("For purposes of the motion to dismiss [for lack of personal jurisdiction], the reviewing court may presume that any uncontradicted evidence submitted by either party is true.")

Importantly, "[o]btaining information on Virginia consumers from a third-party without any direct interaction with those Virginia consumers does not establish purposeful availment." *Gillison v. Lead Express, Inc.*, 2017 WL 1197821, at *11 (E.D. Va. Mar. 30, 2017). Despite acknowledging the possibility that Defendant used third-party vendors to collect data from Virginia in his Amended Complaint, Plaintiff has alleged no facts and presented no evidence suggesting that the Court could impute these vendors' contacts with Virginia to Defendant.[5] For example, Plaintiff has not presented any facts or evidence showing that Defendant and these vendors maintained an agency relationship, such that the vendor's activities in Virginia were effectively Defendant's. *See Grayson*, 816 F.3d at 270-71 (considering whether the conduct of two of a defendant company's employees could be imputed to the defendant by evaluating whether the employees acted as the defendant's agents in making contact with the forum state).

---

[5]    Plaintiff also has not alleged any facts or proffered evidence to demonstrate whether Defendant's predecessor collected the record at issue directly from the OES, or whether Defendant's predecessor also relied on third-party vendors whose contacts with Virginia could be imputed to the predecessor. Plaintiff briefly mentions that Defendant could have used a third-party vendor as an agent in its Memorandum in support of its Motion to Strike, but it does not elaborate on this point, and the Court cannot consider that brief in its Motion to Dismiss analysis. (Mem. in Supp. of Mot. to Strike at 3, 8 n.5); *see Reynolds and Reynolds Holdings, Inc.*, 301 F. Supp. 2d at 549 (stating that the Court can consider the pleadings, motion papers and supporting legal memoranda on a Rule 12(b)(2) motion).

Without this fact, Plaintiff cannot show that Defendant made contacts with Virginia that gave rise to his claims. As noted above, Defendant has no employees, offices or operations in Virginia. (1st Klafehn Decl. ¶¶ 10-15.) It collects data on Virginians through third parties, and it passes that information in bulk to other entities for their own independent use. (2d Klafehn Decl. ¶¶ 11-12, 19.) Although Defendant eventually received data that originated in Virginia on Plaintiff's past traffic infraction, it possesses only an attenuated connection to the Commonwealth.[6] Ultimately, Plaintiff has not "present[ed] sufficient evidence to create a factual dispute" on this issue, which weighs against him in the jurisdictional analysis. *Indus. Carbon Corp.*, 737 F. Supp. at 926.

Indeed, Defendant waited until filing its Reply to address certain facts pertaining to personal jurisdiction. Of particular note, Defendant first acknowledged its use of third-party vendors, its predecessor and the fact that the predecessor collected the relevant data in its Reply in support of its Motion to Dismiss. Plaintiff consequently could not respond to these particular facts as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)-(2) ("A party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to

---

[6]    Relatedly, Plaintiff asserts that Defendant must have known that Plaintiff resided in Virginia when it pulled his traffic record, because "[t]o obtain the Virginia records — records that contained names and addresses of Virginia consumers — GDS had to affirmatively seek them out. GDS obtained records from Virginia and GDS knew that these consumers, including Plaintiff, resided in Virginia." (Opp'n to Mot. to Dismiss at 17.) However, Plaintiff has not pled any facts to support his theory that, because an individual's name appears in the OCIS 2.0 database, they necessarily live in Virginia. In fact, the screenshots of the record that Defendant provided to RealPage that Plaintiff included in his Amended Complaint show only Plaintiff's name, birth date, sex and race, as well as information on the charge and the source of the information. (Am. Compl. at 6.) Nothing in the screenshot of the record affirmatively indicates that Plaintiff resides in Virginia. Moreover, even crediting Plaintiff's statements regarding Defendant's knowledge of Plaintiff's residence as true, Defendant still did not purposefully avail itself of Virginia law, because it used third-party vendors to obtain such information, as explained above.

which a responsive pleading is required, 21 days after service of a motion under Rule 12(b). . . , whichever is earlier. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."); Loc. R. 7(F)(1) (permitting parties to file only an opening brief in support of a motion, the responsive brief and reply brief, and requiring parties to obtain leave of court to file any other briefs).

Specifically, by the time that Defendant filed its Reply, Plaintiff's time to file a second amended complaint without seeking Defendant's consent or leave from the Court had expired. *See* Fed. R. Civ. P. 15(a)(1)(2). However, Plaintiff did not take either of these routes to address this information. Nor did Plaintiff move for leave to file a surreply in opposition to the Motion to Dismiss. *See Adams v. Applied Bus. Servs.*, 2019 WL 7817080, at *1 (E.D. Va. Aug. 30, 2019) ("To cure any . . . prejudice, a surreply is appropriate where 'a party brings forth new material or deploys new arguments in a reply brief.'" (citation omitted)). He instead filed a Motion to Strike both Defendant's Reply and the Klafehn Declarations, which the Court cannot consider as part of its jurisdictional analysis. *See Reynolds and Reynolds Holdings, Inc. v. Data Supplies*, 301 F. Supp. 2d 545, 549 (E.D. Va. 2004) ("If the court determines not to grant a separate evidentiary hearing, *the court may decide the jurisdictional question on the basis of the pleadings, motion papers, and supporting legal memoranda.*" (emphasis added)). On a Rule 12(b)(2) motion to dismiss, a plaintiff must include allegations of personal jurisdiction in his complaint, because those contacts must "create[], in [the plaintiff], a potential cause of action cognizable in [Virginia's] courts." *Fireclean LLC v. Tuohy*, 2016 WL 4414845, at *5 (E.D. Va. June 14, 2015) (quoting *ALS Scan Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)); *see also Gillison*, 2017 WL 11978821, at *14 (finding no purposeful availment when the plaintiff alleged "no meaningful Virginia contacts by [d]efendants"). Without

sufficient allegations of purposeful availment then, the Amended Complaint cannot survive the Motion to Dismiss.

Plaintiff also seeks to establish purposeful availment using the so-called "effects test," but he cannot prevail under this alternate route, either. The effects test allows a plaintiff to show purposeful availment when a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791 (1984). In other words, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Plaintiff has not shown a connection between Defendant and the forum beyond his injury, as Defendant has presented uncontradicted evidence that it had no knowledge of "the end-user's identity or location when it sold Record data to [RealPage]," nor did it know "if, when, or about whom [RealPage] might use GDS's bulk public record data in a consumer report." (Reply at 10 (first citing 1st Klafehn Decl. ¶ 17; and then citing 2d Klafehn Decl. ¶¶ 11-12, 20).) Without this knowledge, Defendant could not have intentionally calculated its actions to injure Plaintiff in Virginia, as the effects test requires.

For these reasons, the Court must find that Defendant has not purposefully availed itself of Virginia law, and that Plaintiff does not fulfill the first prong of specific jurisdiction test. Because Plaintiff failed to meet the first prong, the Amended Complaint cannot survive the Motion to Dismiss. The Court need not address whether this action arose out of Defendant's activities in Virginia or whether exercising personal jurisdiction over Defendant would be constitutionally reasonable. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (holding that a court need not consider prongs two and three if plaintiff does not satisfy the first prong). By

extension, since the Court will dismiss this case for lack of personal jurisdiction, it will not reach

Defendant's arguments regarding venue, for the absence of personal jurisdiction moots the venue

issue. *See Gillison*, 2017 WL 1197821, at *14 n.34 (declining to address venue and defendant's

request to transfer venue from the Eastern District of Virginia to the Central District of

California in a FCRA case, because the court found that it could not exercise personal

jurisdiction over the defendant).

### IV.   PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY

Finally, the Court will also deny Plaintiff's request for jurisdictional discovery. In both

its Opposition to the Motion to Dismiss and its Memorandum in support of its Motion to Strike,

Plaintiff requests 60 days to explore Defendant's contacts with Virginia. "Discovery under the

Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc.*

*v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citing *Mylan Labs.*, 2 F.3d

at 64). That said, "district courts 'have broad discretion in [their] resolution of discovery

problems that arise in cases pending before [them],'" including whether to grant jurisdictional

discovery. *Id.* (quoting *Mylan. Labs.*, 2 F.3d at 64). Courts generally deny requests for

jurisdictional discovery when "a plaintiff offers only speculation or conclusory assertions about

contacts with a forum state," or when the additional information that the plaintiff seeks would

not alter the personal jurisdiction analysis. *Id.* at 402-03 (collecting cases).

As a threshold matter, Plaintiff requested jurisdictional discovery in a rather informal

fashion. Plaintiff did not set forth his request in a separate motion. Instead, he made this

demand as a brief request in the alternative in his Opposition to the Motion to Dismiss and again

in his Motion to Strike. For that reason alone, the Court could exercise its discretion to deny this

demand outright as improperly requested. *See Intercarrier Comm'ns, LLC v. Kik Interactive,*

*Inc.*, 2013 WL 4061259, at *6 (E.D. Va. Aug. 9, 2013) (denying request for jurisdictional discovery when plaintiff did not file a separate motion for discovery and instead included discovery request in a brief in opposition to a motion to dismiss) (citing *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008)).

Putting aside the form of Plaintiff's request, the Court will nevertheless deny Plaintiff's request on the merits, because it finds that such a general demand for jurisdictional discovery to be overbroad and unsupported by "specific and substantive" allegations of the relationship between Defendant and the forum state. *Compare Gillison v. Lead Express, Inc.*, 2018 WL 6537151, at *7 (E.D. Va. Dec. 12, 2018) (in FCRA case, denying plaintiff's request for all contracts pertaining to obtaining or selling plaintiff's credit information as overbroad, because the request lacked specificity), *with Mamo v. BP P.L.C.*, 2006 WL 572327, at *2 (Mar. 7, 2006 E.D. Va.) (permitting jurisdictional discovery when plaintiff made "specific and substantive" allegations regarding personal jurisdiction and submitted a declaration and documents discussing some of the defendant's contacts with forum state).

In its Memorandum in support of its Motion to Strike, Plaintiff enumerates several questions that it states "have been prompted by GDS's Reply." (Mem. in Supp. of Mot. to Strike at 11.) These include:

> Who is GDS's third party vendor that obtained the Virginia records? Did it operate at GDS's direction? Who was the newly revealed GDS "predecessor"? Was it in Virginia? Did GDS update records "received" from its predecessor? If so, how did it update its records? If not, for what reason does GDS not update its data after first acquiring it? Is it true that GDS does not and did not update its "predecessor's" records (which would render them stale and violative of the FCRA)? Is the GDS vendor or predecessor actually GDS's connected business and the witness's actual employer—BackgroundChecks.com? Why can no current GDS employee testify about GDS's business operation (as opposed to someone who previously worked there and presumably lacks access to GDS's records)?

(Mem. in Supp. of Mot. to Strike at 11.)  The Court cannot discern whether Plaintiff seeks to request discovery on Defendant's contacts with Virginia in general or only on these specific issues.  But even if discovery was limited to these particular questions, the Court would still deny Plaintiff's request.

First, as to the requests regarding the third-party vendors, the Amended Complaint makes only a speculative, bare allegation that "[d]iscovery will show that Defendant (either itself or through a vendor) collects some [public records] in a bulk and automated fashion directly from the Virginia court system."  (Am. Compl. ¶ 23.)  In this brief and speculative assertion, Plaintiff has not "tendered with any specificity an allegation that" a third-party vendor's contacts with Virginia could be imputed to Defendant for the purpose of personal jurisdiction.  *Reynolds and Reynolds Holdings, Inc.*, 301 F. Supp. 2d at 554 (denying jurisdictional discovery when plaintiff did not allege that the defendant had sold a product to a Virginia resident, advertised to Virginians or conducted other activities relevant to the jurisdictional analysis).

Likewise, as to the requests pertaining to Defendant's predecessor, the Court is sympathetic to Plaintiff's contention that Defendant's failure to reveal its predecessor until its Reply, which limited Plaintiff's opportunity for rebuttal.  However, Plaintiff does not clarify how answering these questions would change the outcome of the jurisdictional analysis.  If the predecessor's contacts with Virginia could be imputed to Defendant, and the predecessor collected and sold public record data in the same attenuated way as Defendant, then the jurisdictional analysis and its end-result would remain the same.  Furthermore, Plaintiff posits no theories regarding whether the predecessor submitted to a EULA that required it to waive any challenges to personal jurisdiction, like the one discussed above, or created contacts with the forum in some other way, aside from raising the question of whether the predecessor was located

in Virginia. (Mem. in Supp. of Mot. to Strike at 11.) Again, mere speculation about the predecessor's and Defendant's Virginia contacts cannot justify jurisdictional discovery.

Lastly, Plaintiff's questions regarding whether Defendant updated its records and why Defendant did not have one of its current employees testify do not bear on the jurisdictional analysis. The first question appears to pertain to the merits of Plaintiff's claims under the FCRA, and the latter has nothing to do with jurisdiction. Consequently, the Court would also deny jurisdictional discovery on these questions.

## V.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 27) without reaching the issue of venue and DISMISSES WITHOUT PREJUDICE the Second Amended Complaint.[7] The Court further DENIES Plaintiff's Motion to Strike (ECF No. 45) and request for jurisdictional discovery (Opp'n to Mot. to Dismiss at 38-39; Mem. in Supp. of Mot. to Strike at 10.)

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: January 26, 2022

---

[7]      Defendant concedes that there exist alternate fora where it can be sued, including the Northern District of Texas. (Mem. in Supp. of Mot. to Dismiss at 17-18.) For that reason, the Court dismisses the Amended Complaint without prejudice, so that Plaintiff can refile in an alternate forum, if he so chooses. *See Gillison v. Lead Express, Inc.*, 2018 WL 6537151, at *3, 10 (dismissing complaint without prejudice when Defendants identified the Central District of California as the proper venue and requested that the court transfer the case to that district).